IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NICOLE YOUNG,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br><br>Case No. 2:09-CV-291 TS |

This matter comes before the Court on Plaintiff Nicole Young's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits. Having considered the arguments set forth by the parties, reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling, as discussed below.

I. STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether its findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

II. BACKGROUND

A. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on December 9, 2005, alleging disability beginning May 20, 2005.[7] Plaintiff's claim was initially denied on May 23,

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3] *Id*.

[4] *Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5] *Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[7] R. at 51.

2006,[8] and upon reconsideration on October 25, 2006.[9] Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 9, 2008.[10] The ALJ issued a decision on April 16, 2008, finding Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on February 9, 2009.[12] Plaintiff then filed the instant action.

B.  MEDICAL HISTORY

Plaintiff began seeing Dr. Marc Penrod in 2003, complaining of chronic pain, insomnia, and depression.[13] Plaintiff was originally given a diagnosis of rheumatoid arthritis, but has more recently been diagnosed with fibromyalgia.[14] Plaintiff's pain has been treated with Duragesic patches, as well as Lortab and Celebrex, which provided some relief.[15] In June 2003, Plaintiff reported that her pain was not under good control.[16] By August 2003, however, Plaintiff stated

---

[8] *Id*. at 35.

[9] *Id*. at 43.

[10] *Id*. at 13, 332-81.

[11] *Id*. at 13-24.

[12] *Id*. at 3-5.

[13] *See id*. at 214.

[14] *Id*. at 216, 225.

[15] *Id*. at 225.

[16] *Id*. at 219.

3

that her pain medications were keeping her stable and that she did not want to increase the dosages.[17] At that time, Plaintiff was started on medication to improve her sleep.[18]

In December 2003, Dr. Penrod reported that Plaintiff was "doing well" on her pain medication and had not increased her dosage.[19] Dr. Penrod prescribed Zanaflex for her fibromyalgia, which helped Plaintiff sleep, and Zoloft for her depression.[20]

In early 2004, Dr. Penrod stated that Plaintiff was doing well on Duragesic and that Zoloft had helped her depression.[21] Plaintiff stated that the combination of medications was "working well."[22] Plaintiff had lost weight, was more active, and had less pain.[23] In June 2004, Dr. Penrod stated that Plaintiff was "quite stable" at her current dosages of medication.[24]

---

[17]*Id*. at 216.

[18]*Id*.

[19]*Id*. at 214.

[20]*Id*.

[21]*Id*. at 213.

[22]*Id*.

[23]*Id*.

[24]*Id*. at 211.

In September 2004, Plaintiff was diagnosed with an ulcer.[25] Dr. Penrod noted that Celebrex seemed to control the pain related to the ulcer.[26] Dr. Penrod continued to prescribe Duragesic and Lortab for chronic joint pain.[27]

On April 12, 2005, Plaintiff saw Dr. Penrod for a follow-up visit regarding her chronic pain.[28] Dr. Penrod noted that Plaintiff was on Duragesic and Lortab and had been on these medications for many years.[29] Dr. Penrod noted that Plaintiff seemed to be tolerating these medications well and that her pain was "well controlled."[30]

In August 2005, Dr. Penrod stated that Plaintiff's pain had been "fairly well controlled" on her current dosage of Duragesic.[31] Dr. Penrod further stated that Plaintiff's gastroesophageal reflux disease had been "fairly well controlled on Nexium."[32] Dr. Penrod concluded that Plaintiff's "[p]ain in general has been daily, but manageable. Not increasing."[33] Dr. Penrod

---

[25]*Id.* at 203.

[26]*Id.*

[27]*Id.*

[28]*Id.* at 184.

[29]*Id.*

[30]*Id.*

[31]*Id.* at 178.

[32]*Id.*

[33]*Id.*

continued Plaintiff on Duragesic with Lortab for breakthrough pain.[34] In a follow-up visit in November 2005, Dr. Penrod noted that Plaintiff's chronic pain had been "well controlled."[35]

Dr. Penrod completed a Fibromyalgia Residual Functional Capacity Questionnaire on July 12, 2006.[36] In the Questionnaire, Dr. Penrod opined that Plaintiff could: walk 2 city blocks without rest or severe pain; sit for 20 minutes at a time and a total of two hours in an eight-hour day; stand for 15 minutes at a time and a total of two hours in an eight-hour day; frequently carry less than 10 pounds, occasionally carry between 10 and 20 pounds, and never carry 50 or more pounds.[37] Dr. Penrod further stated that Plaintiff would need to sit in a recliner or lie down for three hours per day and would need to take unscheduled breaks every 30 minutes for approximately 5 minutes.[38] Dr. Penrod also stated that Plaintiff would need a job which permits shifting positions at will from sitting, standing or walking, that Plaintiff could not stoop or crouch, and that she would be absent more than four times per month.[39]

---

[34]*Id*.

[35]*Id*. at 177.

[36]*Id*. at 164-167.

[37]*Id*. at 165-66.

[38]*Id*.

[39]*Id*.

Dr. Penrod also completed a questionnaire in August 2006.[40] Dr. Penrod described Plaintiff's illness as severe joint pain, muscle pain, and fatigue, as well as depression.[41] Dr. Penrod stated Plaintiff: was pleasant and calm, with a normal affect; has normal orientation, but has some slight problems with memory and concentration; had no outward evidence of affective disorder, though she had suffered from depression for many years; had no problems in relating to others; and her grooming was nice and appropriate.[42] Dr. Penrod also noted that Plaintiff was unable to drive a car, had help shopping, and needed assistance in doing house work.[43] Dr. Penrod further stated that Plaintiff did a lot of reading and working on scrapbooks, that she did not have the strength or energy to accomplish much, and did not go out much.[44]

On April 7, 2006, a state agency physician completed a Physical Residual Functional Capacity Assessment.[45] The state agency physician concluded that Plaintiff: could occasionally lift 20 pounds and frequently lift 10 pounds; could stand or walk for six hours in an eight-hour day; could sit for six hours in an eight-hour day; could occasionally climb, balance, stoop, kneel,

---

[40]*Id*. at 158-61.

[41]*Id*. at 158.

[42]*Id*. at 159-61.

[43]*Id*. at 160.

[44]*Id*. at 160-61.

[45]*Id*. at 130-37.

crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations.[46]

On April 24, 2006, A.L. Carlisle, Ph.D., a clinical psychologist, conducted a psychological evaluation of Plaintiff.[47] Dr. Carlisle found Plaintiff to be oriented.[48] Dr. Carlisle stated that Plaintiff "has strong depression, frequent crying spells and frequent suicidal thoughts."[49] Dr. Carlisle further stated that Plaintiff "goes to work because she has to get out of the house periodically," but that "[s]he has a strong tendency to withdraw and there are days when she won't leave her bedroom."[50] Dr. Carlisle stated that Plaintiff's memory for recent and long term events is basically intact, but that her husband reminds her of certain things.[51] Dr. Carlisle diagnosed Plaintiff with major depressive disorder, moderate, and assessed a GAF score of 53, indicating moderate symptoms.[52]

In May 2006, a state agency psychiatrist completed a Psychiatric Review Technique form.[53] The state agency psychiatrist found that Plaintiff had a medically determinable

---

[46]*Id.* at 131-34.

[47]*Id.* at 140-42.

[48]*Id.* at 141.

[49]*Id.*

[50]*Id.*

[51]*Id.*

[52]*Id.* at 142.

[53]*Id.* at 143-56.

impairment but that it did not constitute a severe impairment.[54] The state agency psychiatrist reported that Plaintiff had: mild restrictions on activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.[55] The state agency psychiatrist pointed out that Plaintiff engaged in significant activities of daily living and even continued to work part-time after the alleged onset date.[56]

C.    HEARING TESTIMONY

At the hearing, the ALJ heard testimony from a medical expert, Plaintiff, a vocational expert, and Plaintiff's husband. The medical expert testified that Plaintiff did not have a severe mental impairment, but did have a diagnosis of depression secondary to her physical problems.[57] The medical expert testified that Plaintiff had: mild restrictions of daily living; moderate difficulties in maintaining social functioning; moderate difficulties with concentration, persistence, or pace; and one or two episodes of decompensation.[58] The medical examiner testified that Plaintiff's mental impairments likely stemmed from her physical ailments.[59]

---

[54]*Id*. at 143, 146.

[55]*Id*. at 153.

[56]*Id*. at 155.

[57]*Id*. at 337.

[58]*Id*. at 339.

[59]*Id*. at 340-41.

Plaintiff testified that her pain was everywhere and that "[t]here's not one second out of any day that I am not in pain."[60] Plaintiff stated that activities such as driving, vacuuming, sweeping, and writing made the pain worse.[61] Plaintiff testified that she could lift and carry 10 to 15 pounds.[62] Plaintiff stated that she could sit for up to an hour at a time before taking a break and could sit for up to five hours total in an eight-hour day, if she took breaks.[63] Plaintiff further stated that she could stand or walk for about an hour at one time.[64] Plaintiff also stated that she lay down three to four times per day.[65]

The vocational expert identified Plaintiff's past work as a collection clerk and a bartender.[66] The ALJ asked the vocational expert to consider a hypothetical person of Plaintiff's age, education, and vocational history who had the residual functional capacity to: sit continuously for two hours and for six hours in an eight-hour day; stand continuously for one hour and for two hours in an eight-hour day; lift 12 pounds occasionally and 10 pounds frequently; and occasionally walk, climb stairs, squat, bend and stoop, kneel, balance, reach

---

[60] *Id.* at 346.

[61] *Id.* at 347.

[62] *Id.* at 347-48.

[63] *Id.* at 347-49.

[64] *Id.* at 351.

[65] *Id.* at 352.

[66] *Id.* at 371.

10

above shoulder-level, push and pull, use foot controls, and drive a vehicle.[67] Mentally, this hypothetical person was mildly limited in her: ability to concentrate, follow detailed instructions, perform duties within a schedule, interact with the general public, and ability to deal with stress.[68] Additionally, the hypothetical person had some hearing loss in the right ear.[69] The vocational expert testified that such a person could perform Plaintiff's past work as a collection clerk.[70]

Plaintiff's husband also testified at the hearing.[71] Plaintiff's husband testified concerning Plaintiff's knee problems and the impact that these problems had on her life.[72]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claims. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 20, 2005, the alleged onset date.[73] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, chronic fatigue syndrome, a

---

[67] *Id*. at 372.

[68] *Id*. at 372-73.

[69] *Id*. at 373.

[70] *Id*. at 374.

[71] *Id*. at 379-80.

[72] *Id*.

[73] *Id*. at 15.

stomach ulcer, and depression.[74] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[75] At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a collection clerk.[76] Therefore, the ALJ found that Plaintiff was not disabled.[77]

### III. DISCUSSION

Plaintiff raises four arguments in her brief: (1) the ALJ erred by failing to follow the law in determining Plaintiff's credibility; (2) the ALJ erred in failing to properly evaluate the opinions of Plaintiff's treating physician; (3) the ALJ erred by failing to articulate an RFC that included all the limitations he assessed for Plaintiff; and (4) the ALJ erred by failing to address the written statement and hearing testimony from Plaintiff's husband regarding her functional limitations. The Court will address each argument in turn.

A. PLAINTIFF'S CREDIBILITY

Plaintiff first argues that the ALJ erred by failing to follow the law for determining the credibility of her testimony. The ALJ made the following statement concerning Plaintiff's credibility:

> As to the credibility of the claimant, the undersigned does not doubt that she is in pain and that this is a frustrating position to be in as there is no quick fix. Fibromyalgia is a medical condition that fluctuates in frequency and severity of symptoms. Yet, with all individuals having this affliction, the doctors work

---

[74]*Id.*

[75]*Id.*

[76]*Id.* at 24.

[77]*Id.*

12

closely in trying to find a good pain management program that not only manages their pain, but also manages other related problems or symptoms such as sleeping difficulties, fatigue and emotional liability. The evidence of record shows that Dr. Penrod has done just that. Over time, and with trial and error, Dr. Penrod has narrowed the claimant's treatment to certain medications that work the best in addressing all of these problems. He has even addressed any medication side effect problems. At the hearing, the claimant testified that she could sit in 1-hour increments for up to 5 hours in a workday, indicative of the ability to perform sedentary work. Although the claimant maintains that she is completely incapable of working due to pain and fatigue, the undersigned finds the claimant still has the ability to work due to the success of her medication management program.[78]

Social Security Ruling 96-7p sets out relevant factors an ALJ should consider in determining credibility. These include:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[79]

In determining credibility, the ALJ must consider the entire case record.[80] However, the Tenth Circuit "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility . . . ."[81] An ALJ's "credibility determinations are peculiarly the province of the finder

---

[78] *Id.* at 23.

[79] SSR 96-7p.

[80] *Id.*

[81] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence."[82]

The Court finds that the ALJ applied the proper legal standard here. The ALJ specifically considered: the location, duration, frequency, and intensity of the Plaintiff's pain; the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; and Plaintiff's daily activities.[83] These are several of the factors specifically listed in Ruling 96-7p. Considering these and other factors, the ALJ found that Plaintiff was not entirely credible concerning her ability to work. This finding is supported by substantial evidence.

Plaintiff argues that the ALJ erred by focusing solely on a lack of objective medical evidence. However, the records is clear that the ALJ did more than this. The ALJ applied the appropriate standard, set forth above, in considering Plaintiff's credibility. Plaintiff also argues that the ALJ erred in finding that Plaintiff was pain free. The ALJ made no such finding. The ALJ only found that Plaintiff's pain and related symptoms were being managed by her current medications. This finding too is supported by substantial evidence.

B.  TREATING PHYSICIAN

Plaintiff next argues that the ALJ erred in failing to properly evaluate the opinions of her treating physician, Dr. Penrod. The ALJ made the following assessment of Dr. Penrod's opinions:

---

[82]*Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995).

[83]R. at 17-23.

14

The undersigned finds Dr. Penrod is an acceptable medical treating source, placing weight on many of his progress records. However, the undersigned found that his functional assessment of the claimant was extreme in the area of how long she could sit and stand at one time and her total ability to sit in an 8-hour workday. The undersigned also found that his assessment placed the claimant in a functional situation that indicated she could not work in any job as she would need to take frequent breaks, would need to change positions frequently and would need to lay down or recline more than any employer would allow.

For the undersigned, it is hard to accept such extreme limitations when the doctor's own progress reports made no mention of the need to take frequent breaks, recline or lay down up to 6 hours a day or the need for frequent changes in her position. The claimant has a chronic pain condition. Usually, if an individual does not get acceptable relief from pain, it is understandable to assume that they need to change positions, take breaks and rest more than the average individual in order to help change the degree of pain they were experiencing. In the claimant's position, the record shows that she was actually doing better with pain control, with no noted complications from the medications that were working. It is safe to assume that her pain and her medications would not pose significant limitations in sitting and standing. Nor would it interfere with her endurance in being able to complete certain job tasks and assignments.

As to her fatigue, Dr. Penrod would periodically note the claimant's complaints of fatigue but he never quantified how her fatigue would affect her in the work environment. As her complaints waxed and waned, the undersigned can only conclude that her fatigue was not a constant and consistent factor that would require extreme rest periods and extreme breaks on a daily basis.[84]

The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[85] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[86] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in

---

[84]*Id*. at 21.

[85]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[86]*Id*.

15

the record.[87] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[88]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[89] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[90]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[91] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[92]

The Court finds that the ALJ applied the correct legal standard in reviewing Dr. Penrod's opinions. As set forth above, the ALJ found that Dr. Penrod was an acceptable medical treating source. The ALJ even gave weight to many of his progress records. The ALJ, however, rejected

---

[87]*Id.*

[88]*Id.*

[89]*Id.*

[90]*Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[91]*Id.*

[92]*Id.*

16

certain statements made by Dr. Penrod in the Fibromyalgia Residual Functional Capacity Questionnaire. Specifically, the ALJ rejected the extreme limitations Dr. Penrod placed on Plaintiff. In so doing, the ALJ noted specific, legitimate reasons for doing so. The ALJ pointed to the fact that such extreme limitations could not be found in Dr. Penrod's treatment notes, that such extreme limitations were not supported by relevant evidence, and that such limitations were inconsistent with the record as a whole. These findings are supported by substantial evidence. As set forth above, Dr. Penrod's treatment notes do not contain the extreme limitations he placed on Plaintiff in the questionnaire. Rather, his treatment notes repeatedly indicate that Plaintiff's pain was being managed. Additionally, the ALJ's rejection of Dr. Penrod's extreme limitations is supported by the assessment completed by the state agency physician as well as Plaintiff's own testimony at the hearing.

C.   RESIDUAL FUNCTIONAL CAPACITY

The ALJ found, at Step 3, that Plaintiff had: a mild degree of limitations in activities of daily living; moderate difficulty in maintaining social contact; moderate limitations of concentration, persistence, and pace; and one or two episodes of decompensation.[93] At Step 4, the ALJ found that Plaintiff was mildly limited in concentrating, following detailed instructions, performing duties with a schedule, interacting with the general public, and dealing with stress.[94]

Plaintiff alleges that the ALJ erred by failing to reconcile an inconsistency in his findings at Steps 3 and 4. The Court finds no such inconsistency. Social Security Ruling 96-8p makes

---

[93] R. at 16.

[94] *Id*. at 17.

clear that the Paragraph B factors at Step 3 are not an RFC. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ."[95] Thus, the Court finds no inherent inconsistency in the fact that the limitations differ slightly from Step 3 to Step 4.

Plaintiff next argues that this alleged inconsistency creates problems with the hypothetical posed to the vocational expert. However, the hypothetical posed to the vocational expert contained the same mild limitations the ALJ found in determining Plaintiff's RFC.[96]

D.   LAY WITNESS TESTIMONY

Plaintiff's final argument is that the ALJ failed to properly evaluate the testimony of her husband, a lay witness. As set forth above, Plaintiff's husband briefly testified concerning Plaintiff's knee problems and the impact those issues have had on her life. Plaintiff's husband also submitted a written statement.

It is true that the ALJ does not specifically mention the statements made by Plaintiff's husband. However, the Court does not believe that this warrants remand.[97] Plaintiff's husband's

---

[95]Social Security Ruling 96-8p, 1996 WL 374184, *4.

[96]*Compare* R. at 17 *with* R. at 372-73.

[97]*See Brescia v. Astrue*, 287 Fed.Appx. 626, 630-31 (Utah 2008) (refusing to remand where ALJ did not specifically discuss lay witness testimony).

18

statements were largely cumulative of Plaintiff's testimony.[98] Further, where, as here, the ALJ's decision states that he considered all of the evidence, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."[99] Finally, there is at least some indication that the ALJ considered this evidence as he found that Plaintiff could only occasionally walk or climb stairs.[100]

## III. CONCLUSION

Having made a thorough review of the entire record, the Court finds that the ALJ's evaluation and ruling is supported by substantial evidence. Therefore, the Commissioner's findings must be affirmed. Further, the Court finds that the ALJ applied the correct legal standard in determining that Plaintiff did not have a disability within the parameters of 20 C.F.R. § 404.1520 (a)-(f).

For the reasons just stated, the Court hereby AFFIRMS the decision below. The Clerk of the Court is directed to close this case forthwith.

---

[98] *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (rejecting a rule requiring an ALJ to make specific written findings concerning each witness's credibility); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (holding that an ALJ is not required to discuss every piece of evidence).

[99] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005).

[100] R. at 17.

DATED September 17, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge